<u>UNITED STATES DISTRICT COURT</u>
<u>DISTRICT OF CONNECTICUT</u>

| | | |
|---|---|---|
| COMPUWEIGH CORPORATION | : | |
|     Plaintiff, | : | |
| | : | |
| v. | : | No. 3:16-cv-01108 (VAB) |
| | : | |
| HONEYWELL INTERNATIONAL, INC. | : | |
|     Defendant. | : | |

<u>**RULING ON MOTION TO TRANSFER AND MOTION TO DISMISS**</u>

Plaintiff, CompuWeigh Corporation ("CompuWeigh"), brought this action against Defendants, Honeywell International, Inc. ("Honeywell") and ScanSource, Inc. ("ScanSource"), alleging nine counts against both Defendants in connection with the sale of certain commercial devices.  CompuWeigh alleges that the devices were defective, causing damages to the finances and reputation of the company.  On October 27, 2016, CompuWeigh voluntarily dismissed ScanSource as a Defendant in this matter, leaving Honeywell as the sole Defendant.

Honeywell has moved to transfer this case to the United States District Court for the District of South Carolina ("District of South Carolina").  Honeywell's motion to transfer is based on a forum-selection clause contained in the underlying agreement for the purchase of the contested devices.  On the same day that it filed its motion to transfer venue, Honeywell also filed a motion to dismiss Counts Eight and Nine of CompuWeigh's complaint for failure to state a claim under Fed. R. Civ. P. 12(b)(6).  For the reasons outlined below, Honeywell's Motion to Transfer Venue is **GRANTED**, and Honeywell's Motion to Dismiss is **DENIED** as moot.

## I.     FACTUAL BACKGROUND

CompuWeigh is a Connecticut-based company that specializes in automating grain facilities.  Compl. at ¶ 5, ECF No. 1.  Beginning in 2013, CompuWeigh decided to purchase Model IF2 readers ("readers" or "devices") from Intermec Technologies Corporation ("Intermec").  *Id.* at ¶¶ 6, 9, 11.  These devices were designed to read chips contained in identification cards and provide corporate users with information about the individual cardholders.  *Id.* at ¶ 7.  In September 2013, Honeywell acquired Intermec, taking its place in commercial dealings with CompuWeigh.  *Id.* at ¶ 4.

CompuWeigh ordered devices from Intermec and Honeywell on multiple occasions, including in June 2013, in March 2014, and in May 2014.  *Id.* at ¶ 11.  All purchases of the readers were made through ScanSource, as ScanSource was the authorized dealer for Honeywell and its predecessor.  *Id.* at ¶¶ 3, 8.  The Complaint describes ScanSource as a "dealer, agent, partner and/or affiliate" of both entities.  *Id.* at ¶ 3.

In order to purchase the devices, CompuWeigh first had to complete and sign a ScanSource "Customer Application" describing the terms of the engagement.  The front page of the application, just above the customer signature line, reads as follows:

> By signing this application Applicant hereby acknowledges that it is submitting this Application to ScanSource, Inc. and each of its subsidiaries and/or affiliates… Applicant's authorized signature constitutes a representation of the trust and accuracy of all statements made on this Application and its express agreement to abide by the Terms and Conditions of Sale on the second page hereof.

Customer Application, Def. Ex. B, ECF No. 32-2.  As indicated, the Terms and Conditions of Sale are fully listed on the second page.  *Id.*

These terms begin by defining the "Seller" as "ScanSource, Inc., including its subsidiaries and/or affiliates." *Id.* They also include a forum-selection clause, which describes the state of South Carolina as the proper venue for resolving disputes between the parties:

> This agreement shall be construed and enforced in accordance with the laws of South Carolina without regard to the conflicts of law provisions thereof… All claims, actions, disputes, controversies, or suits shall be litigated exclusively in the courts of South Carolina. Each party specifically consents to service of process by and the jurisdiction of and venue in those courts[.]

*Id.* These same terms, including an identical forum-selection clause, were repeated on the back of each of the invoices that accompanied the purchased devices upon delivery. Invoices, Def. Ex. C, ECF No. 32-3.

Though the invoices were never signed by CompuWeigh, the face of every invoice "explicitly limits acceptance to the terms and conditions on the face and reverse side hereof," stating: "This invoice does not insist that an expression of acceptance mirror this offer before a contract will be formed. It shall become a contract when the common carrier has received delivery of the whole or any part thereof, or when the buyer has otherwise consented to the terms and conditions hereof, whichever occurs first." *Id.* The invoices further state that the terms stated on the reverse of the invoice govern the agreements between the parties, superseding all other contractual arrangements. *Id.* CompuWeigh does not claim that it ever objected to the terms listed on either the Customer Application or the invoices, nor does it allege to have refused delivery of any purchased devices.

After CompuWeigh had already sent out the purchased devices to its customers, the devices allegedly began to malfunction. *Id.* at ¶¶ 14-25. According to CompuWeigh, the devices continued to fail, even after extended troubleshooting, replacements and unsuccessful remedial efforts on the part of Honeywell. *Id.* at ¶ 26. CompuWeigh eventually replaced its

customers' malfunctioning Honeywell devices with devices from another company. *Id.* at ¶¶ 29-31. CompuWeigh subsequently initiated this litigation against both Honeywell and ScanSource in this Court, alleging breach of implied warranties, breach of express and implied contract, unjust enrichment, misrepresentation, and violations of the Connecticut Unfair Trade Practices Act ("CUTPA") and seeking both monetary damages and injunctive relief.

## II.    STANDARD OF REVIEW

Motions to transfer venue are governed by 28 U.S.C. § 1404(a), which provides that, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." In *Atlantic Marine Const. Co., Inc. v. U.S. Dist. Court for the Western District of Texas et al.,* 134 S.Ct. 568 (2013), the U.S. Supreme Court held that a forum-selection clause was properly enforced through a motion to transfer venue under § 1404(a).

When a motion to transfer venue seeks to enforce a forum-selection clause, the agreed-upon forum is typically given controlling weight, "particularly where this choice 'was made in an arm's length negotiation by experienced and sophisticated businessmen.'" *Magi XXI, Inc. v. Stato della Citta del Vaticano,* 714 F.3d 714, 721 (2d Cir. 2013) (quoting *New Moon Shipping Co. v. MAN B&W Diesel AG*, 121 F.3d 24, 29 (2d Cir. 1997)). Courts are instructed to enforce a forum-selection clause unless "the resisting party can show that enforcement would be unreasonable and unjust, or that the clause was invalid for such reasons as fraud or overreaching." *U.S. ex rel. QSR Steel Corp., LLC v. Safeco Ins. Co. of America*, No. 3:14-cv-1017 (VAB), 2015 WL 4393576 at *6 (D. Conn. Jul. 16, 2015) (quoting *John's Insulation, Inc. v. Sitka Constr. Co.*, 671 F. Supp. 289, 294 (S.D.N.Y. 1987)).

### III.    DISCUSSION

In two separate motions, Honeywell asks the Court to transfer venue to the District of South Carolina as well as dismiss CompuWeigh's intentional misrepresentation and CUTPA claims.  The Court begins its analysis with the motion to transfer venue, noting that, if this Court decides to transfer this case, the more prudent course of action would be to defer consideration of the motion to dismiss to that court.  *See, e.g., Dollar Phone Access, Inc. v. AT&T Inc*., No. 14-CV-3240 (SLT)(LB), 2015 WL 430286 (E.D.N.Y. Feb. 2, 2015) (denying without prejudice 12(b)(6) motion to dismiss where motion to transfer case was granted); *Everlast World's Boxing Headquarters Corp. v. Ringside, Inc*., 928 F. Supp. 2d 735, 742 (S.D.N.Y. 2013) (noting that it would be "prudent for the Court to address the motion to transfer venue first" where motion to dismiss could effectively be decided by the transferee court).

The forum-selection clause included within the ScanSource terms and conditions of sale lies at the heart of the venue dispute between the parties.  Honeywell seeks to enforce the forum-selection clause against CompuWeigh, arguing that the clause should be given controlling weight in the determination of venue.  CompuWeigh argues that Honeywell, as a non-signatory to the agreement, cannot enforce the clause against CompuWeigh because it should not be considered part of the governing contractual agreement and because it was not foreseeable that the forum-selection clause would also apply to Honeywell.

#### a.    Enforceability of the Forum-Selection Clause

When determining whether a forum selection clause is enforceable, the Court must engage in a four-part inquiry, asking: "(1) whether the clause was reasonably communicated to the party resisting enforcement; (2) whether the clause is mandatory or permissive…; and (3) whether the claims and parties involved in the suit are subject to the forum selection clause... A

5

party can overcome this presumption only by (4) making a sufficiently strong showing that enforcement would be unreasonable or unjust, or that the clause was invalid for such reasons as fraud or overreaching." *Martinez v. Bloomberg LP,* 740 F.3d 211, 217 (2d Cir. 2014) (internal quotation marks and citations omitted). Here, all four components of this inquiry support enforcement of the forum-selection clause.

### i. Whether Clause Was Reasonably Communicated

A forum selection clause is reasonably communicated where it is "phrased in clear and unambiguous language." *Magi XXI, Inc. v. Stato Della Citta del Vaticano,* 818 F.Supp.2d 597, 604-605 (E.D.N.Y. 2011), *aff'd,* 714 F.3d 714 (2d Cir. 2013). Courts have also considered the inclusion of a forum selection clause within the main text of a contractual agreement to support a finding that the forum selection clause was reasonably communicated. *See, e.g. Gasland Petroleum, Inc. v. Firestream Worldwide, Inc.*, No. 1:14-CV-597, 2015 WL 2074501 at *5 (N.D.N.Y. 2015) (finding reasonable communication where forum selection clause was included in the "main body of the text"); *QSR Steel Corp.,* 2015 WL 4393576 at *6 (finding that a forum selection clause was reasonably communicated where "it was unambiguously written into the subcontract"); *Effron v. Sun Line Cruises, Inc.*, 67 F.3d 7, 9 (2d Cir. 1995) (finding forum selection language sufficiently "clear and unambiguous" even where forum selection clause was written in "fine print").

CompuWeigh argues that the forum selection clause should not be considered part of the agreement between the parties, and further suggests that the clause "was not noticed and comes as a surprise" because it was "in boilerplate fine print that was contained on the back of invoices that did not require signature nor was it a consideration at the time the plaintiff entered into its sales agreement." Pl. Mem. in Opp. at 5, ECF No. 49-1. "Second Circuit precedent is clear,

however, that the party challenging the forum selection clause need not have actually read the provision, so long as the 'physical characteristics' of the contract 'reasonably communicated' the existence of the clause, and 'the circumstances surrounding the [signing of the contract] permitted the [defendant] to become meaningfully informed of the contractual terms at stake.'" *United Rentals, Inc. v. Pruett*, 296 F.Supp.2d 220, 225 (D. Conn. 2003) (citing *Ward v. Cross Sound Ferry*, 273 F.3d 520, 523 (2d Cir. 2001)).

Here, in both the Customer Application and the Invoices, the forum selection language is listed alongside all other controlling contract terms.  The clause contained in the initial Customer Application is identical to the one contained on the invoices, thus its inclusion in the invoices did not "materially alter" the contract as CompuWeigh suggests.  *See* Pl. Mem. in Opp. at 4. CompuWeigh insists that the Customer Application is merely a "credit application" as opposed to a formal purchase order, thus its terms should not be enforced as to CompuWeigh in this context.  *See id.* at 2.  However, CompuWeigh clearly signed the Customer Application, unambiguously indicating its acceptance of all listed contract terms, including the forum selection clause.

Furthermore, CompuWeigh's acceptance of the ScanSource invoices that accompanied the delivery of Honeywell's products reaffirmed its agreement to those same contract terms, which were reprinted in full on the back of every invoice.  Though the text may have been in "fine print," the first page of every invoice states that the document "expressly limits acceptance to the terms and conditions on the face and reverse side hereof" and it further instructs the reader, in all caps, to "SEE REVERSE SIDE HEREOF."  Invoices, Def. Ex. C, ECF No. 32-3.  Even if CompuWeigh chose not to read the text on the reverse side of the ScanSource documents, it was given an opportunity to do so on multiple occasions, not only when it initially signed the

Customer Application, but also when it received the ScanSource invoices that came with every delivery.  As indicated on the face of the invoices, each time CompuWeigh accepted the delivery of Honeywell devices, it confirmed its acceptance of the governing ScanSource contract terms. On every invoice, those governing terms included a forum selection clause providing that related legal disputes would be resolved in the District of South Carolina.  *Id.*

The Court finds that the forum selection clause was reasonably communicated. Thus, this factor suggests that the clause is enforceable.

### ii. Whether Clause Is Mandatory or Permissive

The forum selection clause in the ScanSource contract is mandatory, not permissive.  "A forum selection clause is viewed as mandatory when it confers exclusive jurisdiction on the designated forum or incorporates obligatory venue language."  *Magi XXI, Inc*., 818 F.Supp.2d at 605.  According to the contractual language here, venue in the South Carolina is obligatory: the forum selection clause applies to "all claims, actions, disputes, controversies or suits" and provides that they "shall be litigated exclusively in the courts of South Carolina."  Customer Application, Def. Ex. B, ECF No. 32-2; Invoices, Def. Ex. C, ECF No. 32-3.  Accordingly, this factor also suggests that the forum selection clause is enforceable.

### iii. Applicability to Claims and Parties

CompuWeigh insists that the forum selection clause is unenforceable as to Honeywell because Honeywell was not a party to the contractual agreement between CompuWeigh and ScanSource.  Pl. Mem. in Opp. at 6-10.  In *Magi XXI, Inc.,* the Second Circuit held that "a non-signatory to a contract containing a forum selection clause may enforce the forum selection clause against a signatory when the non-signatory is 'closely related' to another signatory."  714 F.3d at 723.  The court further specified that, "[i]n such instances, the relationship between the

non-signatory and that (latter) signatory must be sufficiently close that the non-signatory's enforcement of the forum selection clause is 'foreseeable' to the signatory against whom the non-signatory wishes to enforce the forum selection clause." *Id.*

Honeywell argues that, as Honeywell was known to be an affiliate of ScanSource at the time the contract was formed with CompuWeigh, the parties were 'closely related' such that CompuWeigh could reasonably foresee that Honeywell could enforce the clause.  Def. Mem. in Supp. at 8-9.  CompuWeigh does not dispute that the parties are closely related, but nonetheless insists that it was not foreseeable that Honeywell would be able to enforce this clause. Pl. Mem. in Opp. at 9-10.  It argues that a non-signatory should not be able to enforce a forum selection clause against a signatory, further claiming that Honeywell was not involved in the underlying sales transactions and thus should not be permitted to enforce this clause against CompuWeigh. *Id.*

It is undisputed that ScanSource and Honeywell have a close relationship. CompuWeigh's own Complaint describes ScanSource as a "dealer, agent, partner and/or affiliate" of Honeywell, and each of the claims stated in the Complaint was initially brought against both ScanSource and Honeywell together. Compl. at ¶ 3.  Furthermore, although Honeywell is not a direct signatory to the contractual agreements at issue, the contractual language specifies that ScanSource's affiliates are included in the agreement.  Customer Application, Def. Ex. B, ECF No. 32-2; Invoices, Def. Ex. C, ECF No. 32-3.  The Customer Application specifically states that "[b]y signing this application Applicant hereby acknowledges that it is submitting this Application to ScanSource, Inc. and each of its subsidiaries and/or affiliates."  Customer Application at 1.  On both the Customer Application and the Invoices, the

contract terms and conditions define ScanSource broadly to include "its subsidiaries and/or affiliates." *Id.*, Invoices at 1.

In *Magi XXI, Inc*., the Second Circuit found a non-signatory to be "closely related" to a signatory for purposes of enforcing a forum selection clause against that signatory where the non-signatory was "the source of the contractual authority" at issue. 714 F.3d at 724. Here, Honeywell was the source of ScanSource's contractual authority to sell the model IF2 readers. Similarly, the court in *Magi* found that a "contractually-based forum selection clause also covers tort claims against non-signatories if the tort claims ultimately depend on the existence of a contractual relationship between the signatory parties." *Id.* at 724; *see also Nanopierce Technologies, Inc. v. Southridge Capital Management, LLC*, No. 02 Civ. 0767 (LBS), 2003 WL 22882137 at *6 (S.D.N.Y. Dec. 4, 2003) (finding allegations of extra-contractual "materially false and misleading statements and omissions" to be covered by forum selection clause where contractual language included "any dispute hereunder or in connection herewith").

The forum-selection clause in the ScanSource contract was broadly worded, covering "all claims, actions, disputes, controversies or suits[.]" Customer Application, Def. Ex. B, ECF No. 32-2; Invoices, Def. Ex. C, ECF No. 32-3. This language appears to cover the claims at issue here.

"[T]he fact that a party is a non-signatory to an agreement is insufficient, standing alone, to preclude enforcement of a forum selection clause." *Aguas Lenders Recovery Grp., LLC v. Suez, S.A*., 585 F.3d 696, 701 (2d Cir. 2009). CompuWeigh has alleged no facts, other than Honeywell's status as a non-signatory, to suggest that CompuWeigh could not reasonably foresee enforcement of the forum-selection clause. Accordingly, this factor also suggests that the clause is enforceable.

*iv. Whether Clause Is Unreasonable, Unjust or Invalid*

Finally, CompuWeigh has not specified any facts suggesting that the forum selection clause was unreasonable, unjust or invalid.  Once the first three enforceability factors have been established, the clause becomes "presumptively enforceable" and the burden shifts to the non-movant the make "a sufficiently strong showing that enforcement would be unreasonable or unjust, or that the clause was invalid for such reasons as fraud or overreaching."  *U.S. ex rel. QSR Steel Corp., LLC*, 2015 WL 4393576 at *6 (citing *Martinez*, 740 F.3d at 217).

This burden of rebuttal has been described as a "'heavy burden' that may only be carried by demonstrating: (1) incorporation of the forum selection clause was the result of fraud or overreaching; (2) the law to be applied in the selected forum is fundamentally unfair; (3) enforcement of the clause would contravene a strong public policy of the forum state; or (4) trial in the selected forum would be so difficult and inconvenient that the plaintiff would effectively be deprived of its day in court."  *Gasland Petroleum, Inc.*, 2015 WL 2074501 at *7 (citing *Martinez*, 740 F.3d at 228).  CompuWeigh has not alleged any of these elements, arguing only that CompuWeigh is based in Connecticut and should be allowed to litigate its claims in Connecticut for that reason.  Pl. Mem. in Opp. at 10-11.  Standing alone, this is not sufficient to overcome the presumptive enforceability of the forum-selection clause.

**b.      Public Interest Factors**

Having found that the forum selection clause is enforceable with respect to the dispute between CompuWeigh and Honeywell, the Court may determine whether it would be appropriate to enforce the clause and order a § 1404(a) transfer based only upon "public-interest factors."  *U.S. ex rel. QSR Steel Corp., LLC*, 2015 WL 4393576 at *9 ("In determining whether to transfer the case and enforce a forum selection clause, a court may only look to public-interest

factors"). This is distinct from the traditional § 1404(a) analysis, which usually requires an evaluation of "private interests" such as the convenience of the parties. *Atlantic Marine Const. Co.*, 134 S.Ct. at 582 n.6 (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1981)). "Public-interest factors may include the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; and the interest in having the trial of a diversity case in a forum that is at home with the law." *Id*. (internal citations and marks omitted). "Because these factors will rarely defeat a transfer motion, the practical result is that forum-selection clauses should control except in unusual cases." *Id*. at 582.

CompuWeigh has not identified any factors that would justify transfer in the public interest, nor has it specified any unusual facts that would support keeping this case in this district. The Supreme Court has held that, when conducting this analysis, "the plaintiff's choice of forum merits no weight." *Id.* at 581. Therefore, CompuWeigh's arguments that it would prefer litigation in the District of Connecticut are unavailing. The District of South Carolina, as the forum agreed upon by the parties, should properly determine this dispute.

## IV.    CONCLUSION

Honeywell's Motion to Transfer is **GRANTED**. The Clerk of the Court is directed to transfer this case to the District of South Carolina.   In light of this transfer, Honeywell's Motion to Dismiss is **DENIED** as moot without prejudice to re-filing in the District of South Carolina.

SO ORDERED this 9th day of December at Bridgeport, Connecticut.

/s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE